## HENDRICKS, ET UX. v. CHILTON, ET AL.

1. Where a creditor has caused a levy to be made on property, which, after the levy, is claimed by a third person, and then the same property is again levied on by another creditor, as belonging to the claimant, and after this the claimant collusively dismisses his claim ; these circumstances will not invest a court of equity with jurisdiction of a suit by one creditor against the other, to determine which of their debtors has the right of property. *Quere*—whether a court of law is not competent to direct an issue in the nature of a claim suit, to determine the question, or to protect its officer by enlarging the time for his return.

Appeal from the Court of Chancery for the 39th District.

THE case made by the bill, independent of much extraneous matter, is this :

Peletiah Chilton, Rezin R. Chilton and Asahel Chilton were indebted to Julia Harding, who has since intermarried with Hendricks, when a minor, by several notes. Attachments upon these notes were sued out in the name of one Parke, the guardian of Miss Harding, and levied on certain slaves and other effects, which are charged to be the property of R. R. Chilton. About the same time, as the bill states, Calvin and Franklin Morgan, partners, under the firm of C. Morgan & Son, having a judgment against Peletiah Chilton, Asahel Chilton and others, caused an execution to be issued and levied on the same slaves, as the property of Peletiah Chilton. Rezin R. Chilton, immediately after the levy instituted a claim, under the statute, which he subsequently dismissed.

All the Chiltons are charged to be insolvent, and it is alledged that if C. Morgan & Son are permitted to sell the property levied on to satisfy their debt, nothing will remain to satisfy that of the complainant. It is also charged, that Peletiah Chilton has no interest in the property levied on, and that the withdrawal of the claim interposed by R. R. Chilton, was fraudulent and collusive.

The Chiltons, C. Morgan & Son, and Robert S. Porter, sheriff of Benton county, are made defendants to the bill, and its prayer

81

that Morgan & Son, as well as Porter, as sheriff, may be enjoined and restrained from selling the slaves, &c. under their execution, until the final hearing ; and that if necessary an account may be taken, and the property sold, to satisfy the debt of the complainant.

The bill is filed in the name of Julia Harding, suing by her guardian Nath'l Parke, but she having afterwards intermarried with Hendricks, he was made a party, on motion. An injunction was awarded, and afterwards, the principal defendants answered the bill. The Chiltons admit the existence of the debt, and the suing out the attachment as stated by the bill, but insist it was improperly sued out, for reasons which it is unnecessary to state here. They declare that the execution of C. Morgan & Son was levied before the attachment was sued out. They assert that though R. R. Chilton was invested with the legal title to the slaves, it was in consequence of a bill of sale executed by Peletiah Chilton to him for a nominal consideration only, and that the possession was never relinquished by the latter. That the apparent sale was induced from the circumstance that Peletiah Chilton received the slaves with his wife, they having been bequeathed to her by her father, and feared difficulty, if she should die childless, from the other children of her father. They also assert that the debt to C. Morgan & Son, was contracted by Peletiah in 1833 or 1834, previous to the execution of the bill of sale, and thereupon R. R. Chilton withdrew the claim interposed by him, being advised it would convey no rights against a creditor. They therefore answer that the slaves, &c. are the property of Peletiah Chilton, and deny all fraud and collusion.

The answer of Morgan & Son alledges ignorance of all matters connected with the case, except so far as connected with their own judgments, and call for proof of the indebtedness upon which the attachments of the complainant are levied.

They alledge their debt was contracted by Peletiah and Asahel Chilton in 1833, but renewed, and new notes taken afterwards, upon which judgments were obtained against them and Moses L. Barr and Hugh L. Givens.

They state their information and belief, that the sale pretended to have been made by Peleliah to Rezin Chilton of the slaves, was fraudulent and collusive, and insist on their right to have satisfaction of their judgments.

All the defendants who answer, pray the benefit of a demurrer, because the bill contains no equity, and because the complainant has adequate relief at law.

The only evidence in the cause is the examination of two witnesses on the part of the complainant. One of them testifies that he was present when Peletiah Chilton, in the year 1836, sold certain of the slaves, which are the subject of this suit, to Rezin R., and conveyed them to him for the consideration of three thousand dollars. From thence up to the levy of the Morgan & Son execution, they were known as the property of Rezin R. and acknowledged so by both of the parties. The witness did not know what consideration was actually paid, but has heard Peletiah acknowledge that he received three thousand dollars from Rezin R. for the purchase. He was present and witnessed the contract of sale.

The other witness knew nothing of his own knowledge of the sale, but has often heard both Peletiah and Rezin R. admit the former had sold the slaves to the latter. Since 1838 the witness always understood they were the property of Rezin R. He considered Peletiah good for his debts at the time of the conveyance, and for the property conveyed.

The cause was heard before the Chancellor, upon bill, answers and proofs, and on the demurrer to the bill ; and he dismissed the bill upon the demurrer, on the ground that as the complainant had not established her demand at law, she was not entitled to proceed in a court of equity. From this decree the complainant appeals, and here assigns that it is erroneous.

S. F. RICE, for the appellant, argued,

1. The jurisdiction of chancery, in this case, rests on the principle upon which it interferes to prevent irreparable injury, as in cases of waste. [Pharr v. Reynolds, 3 Alabama Reports, 521 ; Porter v. Spencer, 2 Johnson's Ch. 169.] The fraudulent collusion between Morgan & Son and R. R. Chilton, by which the latter abandoned his claim to the property, and thus subjected it to sale, is a matter of equitable jurisdiction. [Scott v. McMillan, 1 Litt. 302.]

2. The answers admit the claims against the Chiltons and the levies under the execution of Morgan & Son. In avoidance of these admissions, it is asserted that the property in 1833 or 1834,

belonged to Peletiah, and that the debt was then contracted, previous to the conveyance of the slaves to Rezin R. The matter of avoidance is not proved.

3. The answer of Morgan & Son, admits that the debt contracted by Peletiah in 1833, was given up, and other security taken from him, long after the sale to Rezin R. Taking this security was a discharge of the old debt, even if that had been proved. [Minor, 299, 312 ; 1 Stew. 354, 372 ; 10 Wheat. 333; 2 Stew. 498 ; 2 Porter, 280, 401.]

W. P. CHILTON, contra, insisted,

1. That the decree was proper upon the ground assumed by the Chancellor, to-wit, that the complainant had no right to go into equity until she had exhausted her legal remedies. [Morgan v. Crabb, 3 Porter, 470 ; Miller v. Thompson, Ib. 196 ; 2 Leigh, 843 ; Ib. 299 ; 2 John. C. 283 ; 1 Paige, 305 ; 1 Monroe, 106 ; 1 Paine, 525 ; 1 Humphries, 85 ; 4 Johns. C. 671 ; 20 Johns. 554 ; 3 Paige, 320 ; 1 Litt. 302 ; 1 McCord C. 410 ; 2 J. J. M. 301 ; 1 Dev. Eq. 537 ; 1 Hill, 297, 301 ; 10 Yerg. 310 ; Roper v. Cook, Ala. Rep. Jan. Term, 1845.]

2. But if there is equity in the bill, the decree dismissing the bill is proper, as it was heard on the proofs, &c. as well as the demurrer. [8 Gill & J. 93; 2 Stew. 146 ; Lenox v. Pearl, 3 Wheat. 527 ; 2 H. & J. 304, 328.] The answers are strictly responsive to the bill, and deny all its equity, besides calling for proof of the indebtedness on which the complainant founds her right to stop the progress of the execution of C. Morgan & Son. The complainant asserts the title of the slaves is in Rezin R ; this is denied ; and there is no evidence of it, as the witnesses only speak of the declarations of the parties. [Pope v. Hendon, 5 Ala. Rep. 433.] The declarations are in no way connected with the possession, and therefore is no part of the res gestae. [2 Ala. Rep. 526.]

3. The evidence of the witnesses examined, is not sufficient to establish a sale of the slaves, so as to defeat the execution of Morgan & Son. The sale is positively denied by the answers, and no consideration is shown to be paid, either by the witnesses or any other proof. The omission to support the title, under such circumstances, is conclusive. The rights of creditors would stand on flimsy foundations, if they could be defeated by the idle

as well as the false declarations of the debtor. Besides this, the answers of the Chiltons are evidence for Morgan & Son. [Mills v. Gore, 20 Pick. 28.]

GOLDTHWAITE, J.—We are not satisfied that the decree dismissing the bill can be sustained, upon the ground assumed by the Chancellor; for, as it seems to us, the lien created by the levy of an attachment, is not materially different from that which is the result of the levy of an execution; but we shall not examine this point of the case, as there is a reason entirely decisive, which equally sustains the decree.

It is not pretended here that the complainant is pursuing a mere equitable right; on the contrary, it is apparent the aid of equity is sought to protect and advance a claim, which is purely legal. The real contest is between the complainant and Morgan & Son; she claiming to subject the slaves in controversy to the payment of her debt, as the property of one of the Chiltons; and they seeking satisfaction out of the same slaves, as belonging to another person of the same name.

It is evident therefore, if the common law has provided an adequate remedy for the complainant, under the circumstances disclosed, she is entitled to no aid from a Court of Equity.

By the ordinary course of the common law, all questions of the nature of that involved in this case, were determined in a suit against the sheriff. who levies an execution or other process, or omits to do so at his own peril. Not that this officer will not be protected by the Courts of law, when a reasonable doubt exists, or that he will be permitted to exercise his duties vexatiously or capriciously. Ordinarily the officer exercises his best judgment, and protects himself by taking a bond to indemnify himself from the consequences of an improper levy, or from the the consequences of refusing to levy. But if the parties themselves refuse to execute a proper or sufficient indemnity, the Courts, in a proper case, will enlarge the time for making the return, and thus effectually protect their officer. With us, the whole matter is in some degree regulated by statute, as on the one hand, the sheriff, in a case of doubt, is authorized to require an indemnity from the party directing the levy to be made, (Clay's Dig. 210, § 50;) while on the other, he is prevented from doing any material injury to a third person, by making an improper levy, by the enact-

ments which authorize the interposition of a claim suit, at the instance of him whose property is seized.

The case made by the bill assumes, that the sheriff has returned a levy on each of the processes in his hands, and under such a state of fact, it may be questionable whether either party is not entitled to sue him on his return.    But to put the difficulty in its strongest possible light, we will suppose that the claim interposed by R. R. Chilton to the property, when levied on as belonging to Peletiah, was dismissed, with the intention to give Morgan & Son an undue preference, and that the sheriff and his official sureties were insolvent, so that no remedy could be had against him, or them, of an effectual character, for his refusal to levy the attachment at the suit of the complainant; still we think the concurrence of all those circumstances would have no effect to invest a Court of Equity with jurisdiction to determine the legal question, whether the property belonged to the one, or the other of the Chiltons.

Nor would the party be without a remedy, unless we arrive at the conclusion that a Court of Law is inefficient to protect its own suitors, from the misconduct of its own officers.    We have already indicated, that if it was necessary to protect the officer, that the time for returning the process could be enlarged, and on the other hand, we think, if it should become necessary to protect the parties, it could be done by an inquiry with respect to the appropriation of the money, if the property was levied on and sold, under both, or perhaps either process ; or upon a proper representation and proof, that the officer was improperly or capriciously exercising his powers to the prejudice of either party, it possibly would be proper for the Court to interpose, and direct an issue between them, in the nature of a claim suit.

We suggest these considerations, not intending to determine the course to be pursued, but to show that the whole matter is within the control of the Court of Law, and that Equity has no jurisdiction.

The decree dismissing the bill is affirmed, but without prejudice to any proceedings which the complainant may be advised to undertake, if any can be effectual, in the condition the case now is.